UNITED STATES of America,
Plaintiff–Appellee,

v.

Zulquarnan KHAN, Defendant–Appellant.

No. 92–10165.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1993.

Decided April 6, 1993.

As Amended May 11, 1993.

Daniel J. Albregts, Las Vegas, NV, for defendant-appellant.

Anthony S. Murry (argued) and Camille Wintch (on the briefs), Asst. U.S. Attys., Las Vegas, NV, for plaintiff-appellee.

Before PREGERSON and BEEZER, Circuit Judges, and TAKASUGI,* District Judge.

PREGERSON, Circuit Judge:

At the request of the United States, Pakistan extradited Zulquarnan Khan on charges of conspiracy to import heroin in violation of 21 U.S.C. § 963 (Count II), and use of a communication facility to facilitate the heroin conspiracy in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Count VIII). A jury found Khan guilty of both counts. The U.S. District Court sentenced Khan to consecutive terms of fifteen years, for Count II, and four years, for Count VIII. Khan appeals. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Khan participated in a conspiracy to import heroin into the United States during February and March 1984. On March 23, 1984, the United States Drug Enforcement Administration (the "DEA") applied to the U.S. District Court, District of Nevada, for an order authorizing wiretaps and pen regis-ters on Las Vegas telephone numbers belonging to Najeeb Ur Rahman, a co-conspirator. The application was based on the 42–page affidavit of Joseph Catale, a DEA agent personally involved in the investigation of the conspiracy.

According to Agent Catale's affidavit, telephone toll information indicated that calls were made from Rahman's telephone number in Las Vegas to Khan's telephone number in Pakistan. Catale in his affidavit stated that wiretaps were necessary because confidential informants were unwilling to testify against the suspected conspirators. Catale also stated that trying to gather information from drug couriers apprehended while transporting heroin was fruitless because the couriers seldom knew the ultimate destination of the heroin or the identity of the intended recipient. Catale further stated that normal surveillance techniques would be ineffective because the suspected conspirators relied heavily on use of the telephone.

The Nevada U.S. District Court authorized the wiretaps. A conversation between Rahman and Khan was monitored and taped on March 27, 1984.

On August 10, 1984, a federal grand jury sitting in Las Vegas returned a superceding indictment charging Khan and other defendants with drug-related offenses. In Count II, Khan was charged with conspiring to import heroin in violation of 21 U.S.C. § 963. In Count VIII, Khan was charged with using a communication facility, i.e., a telephone, to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) and (c) and 18 U.S.C. § 2. A warrant was issued for Khan's arrest.

On August 24, 1984, Khan was arrested in Pakistan on unrelated charges. On August 30, 1984, Pat Valentine, a DEA agent stationed in Pakistan, visited Khan while he was in the custody of Pakistani officials. Khan gave Agent Valentine a written statement in Urdu, Khan's native language, regarding Khan's involvement in transporting heroin from Pakistan to the United States. Agent Valentine did not advise Khan of *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86

---

* Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

S.Ct. 1602, 16 L.Ed.2d 694 (1966), before asking him for the written statement. Valentine sent an English translation of the statement to DEA headquarters in the United States.

On September 5, 1984, Agent Valentine returned to the Pakistani jail and obtained a more detailed written statement from Khan, again without giving *Miranda* warnings. A translation of the second statement was also sent to the United States.

On October 31, 1984, the United States requested Khan's extradition to the United States based on the charges set forth in the superseding indictment. The extradition documents forwarded to Pakistani officials included an affidavit from an Assistant United States Attorney, Valerie Stewart, which described the charges in both Count II and VIII. A copy of the superceding indictment was attached to the affidavit. Khan was not extradited in 1984 because on December 5, 1984, he was convicted of the unrelated Pakistani charges and sentenced to one year in prison. Khan was subsequently released.

Five years later, on November 12, 1989, Khan was arrested in response to a second extradition request based on the 1984 indictment. Khan gave oral and written statements to Pakistani officials while in Pakistani custody in November 1989, admitting his involvement with Rahman and narcotics smuggling into the United States. Khan was extradited to the United States on April 12, 1991, following extradition proceedings before a Pakistani Deputy Commissioner Enquiry Officer and the Lahore (Pakistan) High Court.

On April 26, 1991, Khan was arraigned in U.S. District Court and pled not guilty to Counts II and VIII. On October 2, 1991, Khan moved to suppress the tape-recorded telephone conversations obtained under the order authorizing the DEA wiretaps of Rahman's telephones. On October 3, 1991, Khan moved to suppress the written statements given to DEA agent Valentine in 1984. Khan also filed a motion to dismiss Count VIII of the indictment on grounds that the United States had not satisfied the extradition doctrines of "dual criminality" and "specialty." On November 19, 1991, the U.S. Magistrate Judge recommended that Count

VIII should not be dismissed. On December 4, 1991, Khan moved in limine to exclude potential evidence of his involvement with heroin smuggling in 1983. This involvement occurred before the dates of the offenses alleged in Counts II and VIII of the indictment.

On December 9, 1991, the district court held an evidentiary hearing on the pending motions. The district court denied Khan's motions to suppress and affirmed the magistrate judge's findings regarding the motion to dismiss Count VIII. The district court deferred ruling on the motion in limine until trial.

Khan's jury trial began on December 10, 1991. The government introduced the following evidence, which Khan challenges on appeal: (1) the tape recording and transcript of a telephone conversation between Rahman and Khan on March 27, 1984; (2) the two written statements Khan gave to DEA Agent Valentine in 1984; (3) evidence that Khan travelled to New York in the summer of 1983 for a heroin transaction. The 1983 drug trip evidence was presented through (a) the testimony of DEA investigative assistant Shergul Khan, who interpreted Khan's admission of the trip stated in Khan's written statement, (b) the testimony of drug couriers Nisar Ahmad and Nasir Ali Khan, who first smuggled heroin with Khan on the 1983 trip, and (c) four photographs of Khan taken while he was in New York in 1983.

On December 12, 1991, the jury found Khan guilty of Counts II and VIII.

On February 28, 1992, the district court held that Khan's prior 1984 Pakistani conviction on drug charges could properly be considered in determining his sentence. The district court sentenced Khan to consecutive terms of fifteen years, as to Count II, and four years, as to Count VIII.

## II. DISCUSSION

**A. Did the district court err in denying Khan's request to dismiss Count VIII of the indictment?**

Khan contends that under the doctrines of "dual criminality" and "specialty" he should not have been prosecuted on charges alleged

in Count VIII and that his conviction on that count should be reversed.

### 1. Standard of Review

██ We review de novo whether extradition of a defendant satisfies the doctrines of "dual criminality" and "specialty." *United States v. Van Cauwenberghe,* 827 F.2d 424, 428 (9th Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

### 2. Dual criminality

 Under the doctrine of "dual criminality," " 'an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations.' " *Id.* (quoting *Quinn v. Robinson,* 783 F.2d 776, 791–92 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986)). The doctrine of dual criminality is incorporated in the operative extradition treaty between the United States and Pakistan: "Extradition is also to be granted for participation in any of the aforesaid crimes or offences, provided that such participation be punishable by the laws of both High Contracting Parties." Extradition Treaty, December 22, 1931, art. 3, 47 Stat. 2122, 2124.[1]

Khan contends that the act alleged in Count VIII of the indictment is not punishable as a crime under the laws of Pakistan. Count VIII charges Khan with violation of 21 U.S.C. § 843(b), i.e., the use of a telephone to facilitate the commission of a drug felony.[2] Count VIII also charges Khan with violating 18 U.S.C. § 2, aiding and abetting the commission of an offense against the United States.

Khan contends that using a telephone during the commission of a drug offense is not,

by itself, a criminal act in Pakistan. Khan concedes that under Pakistani law drug trafficking conspiracies are criminal acts.[3] Khan also concedes that the lawful use of a telephone can be considered an "overt act" committed in furtherance of a criminal conspiracy (as in Count II), but contends that such use standing alone cannot be charged as a separate crime.

The government argues that as long as the underlying conduct is criminal, dual criminality is satisfied. The government contends that because the telephone use is part of the overall criminal conduct of the conspiracy, it constitutes a punishable crime in Pakistan. But it appears that it would be punishable in Pakistan as part of the crime of conspiracy, which is charged in Count II.

 It is true that dual criminality does not require that Pakistan have a provision that is the exact duplicate of 21 U.S.C. § 843. *See Emami v. United States Dist. Court for N. Dist. of Cal.,* 834 F.2d 1444, 1450 (9th Cir.1987); *Theron v. United States Marshall,* 832 F.2d 492, 496–97 (9th Cir.1987), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). But we have not been presented with a Pakistani crime that is even analogous to 21 U.S.C. § 843. We have reviewed other cases that address this issue. Many cases have held that dual criminality is satisfied even though the names of the crimes and the required elements were different in the two countries. But in each of these cases the laws of the two countries were sufficiently analogous to satisfy dual criminality. *See, e.g., Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1921) (dual criminality satisfied because Indian offense of "cheating" was analogous to Louisiana offense of "false pretenses"); *Kelly*

---

**1.** According to *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 1992,* compiled by the Treaty Affairs Staff, Office of the Legal Advisor, U.S. Department of State, the United States Extradition Treaty with Great Britain dated December 22, 1931, which was made applicable to India from March 9, 1942, *is the operative extradition treaty between the United States and Pakistan.*

**2.** 21 U.S.C. § 843(b) states the following in pertinent part:

(b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter [Title 21, Chapter 13, Subchapter I] or subchapter II of this chapter.

**3.** "Crimes or offences or attempted crimes or offences in connection with the traffic in dangerous drugs" are explicitly listed as extraditable offenses in the treaty between the United States and Pakistan. Extradition Treaty, December 22, 1931, art. 3, 47 Stat. 2124.

*v. Griffin,* 241 U.S. 6, 14, 36 S.Ct. 487, 489, 60 L.Ed. 861 (1915) (dual criminality satisfied though Canadian perjury law did not require that statements be material, while Illinois law required materiality as an element of the offense); *Bozilov v. Seifert,* 983 F.2d 140, 143 (9th Cir.1993) (dual criminality satisfied because defendant could have been charged with conspiracy in the United States if the two countries' positions had been reversed); *Emami,* 834 F.2d at 1450 (dual criminality satisfied because fraud under German Penal Code ¶ 263 comparable to U.S. crime of mail fraud under 18 U.S.C. § 1341); *Theron,* 832 F.2d at 497 (dual criminality satisfied because South African law, though broader, was analogous to U.S. bank fraud); *In re Russell,* 789 F.2d 801, 804 (9th Cir.1986) (dual criminality satisfied even though Australian conspiracy law did not require "overt act"); *United States v. Sensi,* 879 F.2d 888, 893 (D.C.Cir.1989) (dual criminality satisfied where, under U.K. law, to commit mail fraud one must succeed in stealing something whereas, under U.S. law, that is not a requirement).

We are not aware of any Pakistani law that is analogous to 21 U.S.C. § 843. Consequently, we are not convinced that Khan could be charged and punished in Pakistan for the conduct underlying Count VIII, separate and apart from the crime of conspiracy. Therefore, the doctrine of dual criminality has not been satisfied with respect to Count VIII.

### 3. Specialty

■ "As a matter of international comity, '[t]he doctrine of "specialty" prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite.'" *Van Cauwenberghe,* 827 F.2d at 428 (quoting *Quinn,* 783 F.2d at 783). *See United States v. Rauscher,* 119 U.S. 407, 419–421, 7 S.Ct. 234, 240–241, 30 L.Ed. 425 (1886).[4]

Khan contends that Pakistan agreed to extradite him on the basis of Count II, but not on Count VIII of the superceding indictment. Khan contends that the Pakistani extradition documents do not specifically refer to the allegations of Count VIII and therefore his conviction on Count VIII should be dismissed.

The parties have provided two Pakistani documents, an Enquiry Report from a Deputy Commissioner Enquiry Officer dated February 14, 1990 ("commissioner's report") and a judgment from the Lahore High Court at Lahore dated March 4, 1990 (this document is incomplete). The commissioner's report refers three times to 21 U.S.C. § 963 (the violation alleged in Count II) and makes no reference to 21 U.S.C. § 843 or 18 U.S.C. § 2 (the violations alleged in Count VIII). The Lahore judgment refers once to 21 U.S.C. § 963 and makes no reference to 21 U.S.C. § 843 or 18 U.S.C. § 2.

The Pakistani commissioner's report lists the documents received from the United States in connection with the extradition request. These documents included copies of the Stewart affidavit, which described the charges in Counts II and VIII, and the superceding indictment. The list in the report specifically noted that "the indictment relating to [Khan] is with regard to count No. II and VIII." In addition, the commissioner's report reviews the factual background of the extradition request including the various telephone calls between Khan and his codefendants throughout the course of the conspiracy. The commissioner stated that he had carefully examined the evidence presented by the prosecution.

The magistrate judge determined that the Pakistani commissioner had considered all the evidence presented by the United States, including the Stewart affidavit and Count VIII in the superceding indictment. Relying on *United States v. Sensi,* 879 F.2d 888, 896

---

4. The doctrine of specialty is also incorporated in the extradition treaty between the United States and Pakistan:

A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any other matters,

than those for which the extradition shall have taken place, until he has been restored, or has had an opportunity of returning to the territories of the High Contracting Party by whom he has been surrendered.

Extradition Treaty, December 22, 1931, art. 7, 47 Stat. 2124.

(D.C.Cir.1989), the magistrate judge found the reference to the evidentiary materials sufficient to satisfy the doctrine of specialty. The district court found that it was "quite clear that the United States Government requested extradition on Count VIII, and that the Magistrate in Pakistan considered extradition on Count VIII and granted it."

The opinion in *United States v. Sensi* is not dispositive. In *Sensi,* 879 F.2d at 896, the D.C. Circuit focused on the evidence submitted with the United States' request for extradition and found it sufficient to support each count of the indictment. The British magistrate (England was the surrendering country) had not delineated the United States counts for which the defendant was extraditable, but had concluded that the defendant was extraditable. The magistrate found that 18 charges of theft were made out by the evidence under United Kingdom law. *Id.* at 892. The British magistrate had received a copy of the United States indictment. *Id.* at 896.

In *Sensi,* however, the operative extradition treaty contained the following language: " 'A person extradited shall not be [prosecuted] ... for any offense other than *an extraditable offense established by the facts in respect of which his extradition has been granted.*' " *Id.* at 895 (quoting 28 U.S.T. 233). The operative treaty in this case contains the following language: "A person surrendered can in no case be [prosecuted] ... for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place." Extradition Treaty, December 22, 1931, art. 7, 47 Stat. 2124. We are not convinced that the doctrine of specialty is satisfied under all treaties as long as the prosecution is based on the same facts as those set forth in the request for extradition.

■ Language from our opinions in *Van Cauwenberghe* and *Quinn,* "for any offense other than that for which the surrendering state agreed to extradite," suggests the need for an affirmative statement by the surren-

dering country of the counts upon which the extradition is based. In *United States v. Merit,* 962 F.2d 917, 923 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 244, 121 L.Ed.2d 178 (1992), the South African Supreme Court affirmatively found the defendant extraditable on Count 1 and Count 14 of the indictment. The South African Supreme Court's ruling was initially ambiguous regarding the other 12 counts for which the defendant was indicted. The United States requested clarification and the South African Department of Justice confirmed that the defendant was extraditable on Counts 1 and 14. *Id.* at 920. We found that the United States had adhered to the specialty requirement of the treaty because the defendant was tried and convicted of *only those two counts.* *Id.* at 923.

■ The extradition materials do not indicate that Pakistan unambiguously agreed to extradite Khan on both Counts II *and* VIII. The magistrate judge found it persuasive that "the commissioner's report does not suggest that Khan ought not to be extradited on the charge contained in Count VIII." But we will not infer an agreement to extradite from Pakistan's silence concerning Count VIII.[5]

The government notes that the Pakistani commissioner directed that Khan could be "surrendered over to the authorities in the U.S.A. for trial under the relevant American Law." It is possible that the Pakistani commissioner was referring to the relevant American law of 21 U.S.C. § 963 (in Count II). It is also possible that Pakistan did not find the charges in Count VIII worthy of extradition. *See generally United States v. Rauscher,* 119 U.S. 407, 420–21, 7 S.Ct. 234, 241, 30 L.Ed. 425 (1886) (defendant extradited on murder charges could not be prosecuted for lesser offense of cruel and unusual punishment, which was not listed in the extradition treaty).

---

5. Even if our review of the extradition documents were guided by the standard " 'whether the requested state has objected or would object to prosecution' " as suggested by the D.C. Circuit in *Sensi,* 879 F.2d at 895 (quoting *Restatement (Third) of Foreign Relations Law of the United* *States* § 477, comment b), we would reach the same result. We presume, without evidence to the contrary, that Pakistan would object to extradition on the basis of Count VIII because the offense charged there is not a crime in Pakistan.

Because Pakistan did not unambiguously agree to extradite Khan on the basis of Count VIII, the doctrine of specialty has not been satisfied. Khan's conviction on Count VIII should be reversed and dismissed.

**B. Did the district court err in refusing to suppress evidence obtained from wiretaps?**

### 1. Standard of Review

"We review de novo whether a full and complete statement was submitted in compliance with 18 U.S.C. § 2518(1)(c), but we review the issuing judge's decision that the wiretaps were necessary for an abuse of discretion." *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986) (citing *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir.1985)). We review for abuse of discretion a trial court's decision whether to hold an evidentiary hearing on a motion to suppress. *United States v. Mejia*, 953 F.2d 461, 465 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992).

### 2. The necessity requirement of 18 U.S.C. § 2518(3)(c)

■ Under 18 U.S.C. § 2516(1)(e), the Attorney General may authorize application to a federal judge for an order authorizing the interception of telephone communications through a wiretap for any offense involving the importation of dangerous drugs. The application must satisfy the requirements of 18 U.S.C. § 2518. Under section 2518(1)(c), the application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." This is referred to as the "necessity requirement." The judge determines whether the applicant has satisfied the requirements of section 2518(1)(c). *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir.), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 228 *and cert. denied,* 498 U.S. 948, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990).

■ Khan contends that the government bypassed other reasonable investigative techniques that could have been employed in lieu of the wiretap. He concludes that, therefore, the necessity requirement has not been met.[6] But law enforcement officials do not have to exhaust every investigative alternative before obtaining a wiretap. *Brone,* 792 F.2d at 1506. Reviewing the factual allegations of the 42–page affidavit as a whole, it does not appear that the issuing court abused its discretion in authorizing the wiretap. *See id.* Thus, the district court did not err in allowing admission of the wiretap evidence.

Khan contends that the district court refused to grant an evidentiary hearing on his motion to suppress the wiretap evidence and that this was error. Khan's motion, however, was before the district court at the evidentiary hearing held December 9, 1991. There is no indication that Khan was denied the opportunity to present evidence regarding the motion to suppress wiretap evidence at that time.

**C. Did the district court err by not suppressing Khan's statements made to a U.S. DEA agent while Khan was in custody in Pakistan, because the DEA agent did not advise Khan of rights under *Miranda* ?**

### 1. Standard of Review

■ We review de novo the district court's denial of a motion to suppress evidence. *United States v. Homick*, 964 F.2d 899, 903 (9th Cir.1992). Whether Khan was entitled to warnings under *Miranda v. Arizona* while in custody in Pakistan is an issue of law also reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### 2. Did Khan raise the *Miranda* issue before the district court so as to preserve it for appeal?

■ The government contends that Khan waived this argument because the focus of

---

**6.** A prior panel of this court rejected a similar argument made by one of Khan's separately tried codefendants regarding the same wiretap application at issue here. *United States v. Sharif,* 878 F.2d 387 (9th Cir.1989). We are not bound, however, by that panel's determination of this issue because the defendants were convicted in separate trials. *United States v. Maybusher,* 735 F.2d 366, 370 (9th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

the motion to suppress before the district court was that the statements were involuntary, not that DEA Agent Valentine failed to give Khan *Miranda* warnings. The authority the government cites for its waiver argument is inapposite. In *United States v. Restrepo-Rua*, 815 F.2d 1327, 1329 (9th Cir. 1987), and *United States v. Kupau*, 781 F.2d 740, 742 (9th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986), the appellants had failed completely to present the issues in question to the district courts. Khan shifted the focus of his argument on appeal, but he did raise the *Miranda* issue before the district court.

In his motion to suppress, Khan argued that his statements were coerced because he was mistreated by Pakistani officials while in custody. But he also noted in his motion that *Miranda v. Arizona* established procedural safeguards to protect an accused's constitutional rights. In addition, Khan noted that the "discovery provided to the defense is devoid of anything that would indicate that the officers who took the statement from Khan read him his rights, determined whether he understood his rights, and obtained a voluntary waiver of those rights prior to obtaining the statements from Khan." Thus, Khan has preserved this issue for appeal.

3. Was Khan entitled to an advisement of rights under *Miranda v. Arizona?*

Khan raises an issue of first impression: Is a foreign national's custodial statement, made while being questioned by a U.S. agent in a foreign country, properly admissible in evidence, where the U.S. agent failed to give the foreign national the *Miranda* advisement of rights? We do not decide this issue, however, because even if Khan's statements were improperly admitted into evidence by the district court, the error was harmless.

 Violations of the procedural safeguards of *Miranda* are subject to a harmless error analysis. *United States v. Henley*, 984 F.2d 1040, 1044 (9th Cir.1993); *Collazo v. Estelle*, 940 F.2d 411, 423 (9th Cir.1991) (en banc), *cert. denied*, ─── U.S. ───, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992); *United States v. Disla*, 805 F.2d 1340, 1347 (9th Cir.1986). A

conviction will be sustained " 'if admission of the un-*Mirandized* statements constituted harmless error.' " *Henley*, at 1044 (quoting *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1047 (9th Cir.1990)).

An error of constitutional dimension is harmless if " 'the state has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Collazo*, 940 F.2d at 424 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). *See also Yates v. Evatt*, ─── U.S. ───, ───, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991) "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates*, ─── U.S. at ───, 111 S.Ct. at 1893. All the other evidence of Khan's participation in the heroin conspiracy, including the admissible statements given by Khan to Pakistani officials,[7] render unimportant and harmless any possible error in admitting into evidence statements made to DEA Agent Valentine.

**D. Did the district court err in admitting evidence of a prior heroin transaction?**

1. Standard of Review

 We review for abuse of discretion the admission of evidence of other crimes under Fed.R.Evid. 404(b). *United States v. Sitton*, 968 F.2d 947, 958 (9th Cir.), *cert. denied*, ─── U.S. ───, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992), *and cert. denied*, ─── U.S. ───, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). We also review for abuse of discretion a district court's decision on balancing probative value against prejudicial effect under Fed.R.Evid. 403. *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990). But if the appellant fails to object to evidence under Rule 404(b) or Rule 403 in the district court, we review the admission of the evidence for plain error. *See* Fed.R.Evid. 103(d); *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

---

7. Statements given to police officers of a foreign country are not excludable because *Miranda*

warnings are not given. *United States v. Chavarria*, 443 F.2d 904, 905 (9th Cir.1971).

### 2. Did Khan preserve this issue for appeal?

The government contends that the admission of the 1983 drug trip evidence is subject to plain error review because Khan failed to contemporaneously object to the evidence at trial. We agree.

Although before trial Khan moved in limine to object to the admission of evidence of other crimes under Rule 404(b) and argued at the December 9, 1991 pre-trial hearing that the probative value of the evidence of other drug activity would be far outweighed by its prejudicial effect, Khan has not preserved this issue for appeal.

Khan's motion in limine was specifically directed at the potential testimony of co-conspirator Sherrul Zaman Khan. The district court deferred ruling on Khan's motion until the time Sherrul Zaman Khan was called to testify. This never occurred. Thus, the district court did not rule on Khan's motion and Khan did not request a ruling based on Rule 404(b) or Rule 403 for any of the other evidence introduced. Khan did not object on the basis of Rule 404(b) or Rule 403 to the testimony of the couriers, Ahmad and Nasir Ali Khan, the admission of the photographs, or the testimony of DEA investigative assistant Shergul Khan.

In essence, Khan contends that contemporaneous objections to the 1983 drug trip evidence were unnecessary because his motion in limine on the Rule 404(b) evidence constituted a pending or continuing objection to all like evidence. But to avail himself of the benefit of a continuing objection, he was required to request that his earlier objection apply to all other like evidence. *See* Jack B. Weinstein, *Weinstein's Evidence* ¶ 103[04], at 103–50 (1992).

Because Khan failed to object to the other evidence of the 1983 trip on the basis of Rule 404(b) or Rule 403 or failed to establish a continuing objection to all like evidence, we review the admission of this evidence for plain error.

### 3. Did the district court plainly err by admitting evidence of the 1983 heroin transaction?

Although he cites Rule 404(b), on appeal Khan does not contend that evidence of the 1983 trip was introduced for impermissible reasons under Rule 404(b). The crux of Khan's argument is that the prejudicial effect of the evidence outweighs its probative value under Rule 403.[8]

Khan contends that the 1983 photographs were prejudicial because they depicted Khan as carefree and rich, as someone who was enjoying the proceeds of drug transactions. He states in his brief "[i]n short, evidence of the prior trip depicted Khan as a world class heroin dealer when the indictment charged him with one episode of smuggling." He also asserts that the government had ample evidence establishing that Khan was the source of the heroin in the conspiracy charge and, therefore, the 1983 evidence was not needed.

Our ruling in *United States v. Chambers*, 918 F.2d 1455, 1462 (9th Cir.1990) cuts against Khan's argument. In *Chambers*, the defendant argued that photographs depicting him in expensive clothing and gold jewelry allowed the jury to convict him because of his dress and lifestyle. We stated there that it was unlikely that the photographs had that prejudicial effect. We held that the manner of dress was not so prejudicial that it outweighed the probative value of the photographs. *Id.*

The evidence of the 1983 drug trip was of great probative value. It tended to show the preparation, planning, and background of the conspiracy actually charged. At least two of the co-conspirators involved were the same, Ahmad and Nasir Ali Khan. The drug involved was the same. It was also close in time to the conspiracy charged, taking place only several months earlier. The prejudicial effect alleged here does not outweigh the probative value of the evidence introduced.

**8.** Two of our cases add the probative/prejudicial balancing as a requirement of the analysis under Rule 404(b), *United States v. Sneezer*, 983 F.2d 920, 924 (9th Cir.1992) and *United States v. Ross*, 886 F.2d 264, 267 (9th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1818, 108 L.Ed.2d 947 (1990). It is clear from examining the authority relied on by these two cases, however, that the probative/prejudicial balancing is rooted in Rule 403 and is separate from the Rule 404(b) inquiry.

**1378**

In addition, the government contends that any prejudicial effect was mitigated by the Rule 404(b) limiting instructions the district court gave to the jury. Three different times during the trial, the district court instructed the jury that the evidence of other drug transactions was admissible only to show motive, intent, identity, knowledge, or absence of mistake. In *Houser*, 929 F.2d at 1373, we stated that "[i]t is always possible that the similarity between the prior acts and the current offense would improperly affect the jury's deliberations, but the district court carefully instructed the jury on the limited purposes for which the evidence was admitted." We held in *Houser* that the district court had not abused its discretion. *Id.*

Admitting the evidence of the 1983 drug trip was not plain error.

### E. Did the district court err by considering Khan's prior Pakistan conviction at Khan's sentencing?

#### 1. Standard of Review

Pre-guidelines sentences issued within statutory limits are left to the sound discretion of the district court. *United States v. Pomazi*, 851 F.2d 244, 247 (9th Cir.1988), *overruled on other grounds by United States v. Sharp*, 941 F.2d 811, 815 (9th Cir.1991). *See also United States v. Williams*, 782 F.2d 1462, 1466 (9th Cir.1986) ("It is a general principle that a judge may conduct a virtually unlimited inquiry when imposing sentence."). If the sentence raises constitutional issues, however, we conduct a less deferential review. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Pomazi*, 851 F.2d at 247. A sentence must be set aside if the district court relied at least in part on misinformation of constitutional magnitude. *Williams*, 782 F.2d at 1466.

#### 2. Was it error for the district court to consider the prior Pakistani conviction?

Khan contends that the district court improperly considered his prior, uncounselled, Pakistani conviction at sentencing. He argues that as a result his sentence was enhanced based on an unconstitutional conviction.

Under *Tucker*, 404 U.S. 443, 92 S.Ct. 589, and *Farrow v. United States*, 580 F.2d 1339 (9th Cir.1978), it is impermissible for a district court to enhance a sentence based on a prior, uncounselled conviction. These cases involved prior, *United States* convictions. But we have allowed defendants to challenge the use of *foreign* convictions under *Tucker*. *See United States v. Fleishman*, 684 F.2d 1329 (9th Cir.) (defendants challenged district court's consideration at sentencing of prior, uncounselled, Mexican convictions), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Khan, however, has provided no evidence here or before the district court that the prior, Pakistani conviction was uncounselled or otherwise invalid. Thus, we do not conclude that the district court erred by considering the prior, Pakistani conviction at sentencing.

### III. CONCLUSION

The conviction and sentence on Count II are AFFIRMED. The conviction and sentence on Count VIII are REVERSED. This case is REMANDED for further proceedings on Count VIII consistent with this decision.