STATE of Wisconsin EX REL. Kenneth ONAPOLIS
a/k/a Kenneth Shong,
Petitioner-Appellant,†

v.

STATE of Wisconsin,
Respondent-Respondent.

Court of Appeals

*No. 2005AP877. Submitted on briefs March 7, 2006.
—Decided April 25, 2006.*

2006 WI App 84

(Also reported in 716 N.W.2d 169.)

————————————

† Petition to review filed.

————————————

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Kenneth Onapolis (a.k.a. Kenneth Shong)*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, by *Michael C. Sanders*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Kenneth Onapolis, a/k/a Kenneth Shong,[1] appeals *pro se* from an order dismissing his petition for a writ of *habeas corpus*. He claims

---

[1] The petitioner-appellant is currently incarcerated in Wisconsin under the name "Shong." He filed his petition, however, under the surname of "Onapolis." The trial court referred to him as such and so will this court.

the trial court erred in not recognizing that the Rule of Specialty incorporated in the United States/Australia Extradition Treaty prohibits the State of Wisconsin from detaining and punishing him for a parole violation. Because the trial court did not improperly apply the Rule of Specialty contained in an extradition treaty between the United States and Australia, and because the appellant was detained by the State of Wisconsin resulting from the same conduct for which he was extradited, we affirm.

## BACKGROUND

¶ 2. The factual setting giving rise to this appeal is not in dispute. In 1988, Onapolis was convicted in Wisconsin of two counts of forgery (Class C felonies), one count of theft by false representation, and one count of issuance of worthless checks (over $500). He was paroled in 1993, and on or about March 12, 1993, he absconded from supervision. The Department of Corrections issued an apprehension and hold order. Subsequently, Onapolis was convicted in Ohio of mail fraud and served a term of confinement. He was placed on extended supervision, but again absconded.

¶ 3. On May 12, 2002, United States Marshals seized Onapolis in the Republic of Vanuatu, an island nation located in the southwest Pacific Ocean, northeast of Australia. The marshals conveyed Onapolis by plane to Sydney, Australia, where he was brought before a hearing examiner for the purposes of extradition. After a hearing, the examiner determined Australia waived any objection to Onapolis's extradition to the United States to face allegations of fraud and federal tax evasion. His appeal was denied. He was returned to the United States and charged with bank fraud and federal tax evasion. He pled guilty to the federal tax

823

evasion charge in 2002. After a term of confinement for eighteen months, as Onapolis was to begin a term of released supervision in 2004, he was arrested and extradited to Wisconsin for the purposes of parole revocation proceedings. His parole was revoked and he is now confined in the Wisconsin state prison system.[2]

¶ 4.   Onapolis petitioned for a writ of *habeas corpus* seeking release on the basis that his extradition violated the Rule of Specialty under the "treaty on Extradition between Australia and the United States of America." The State opposed the petition and moved to dismiss it. The circuit court granted the motion. Onapolis now appeals.

## ANALYSIS

*A.   Standard of Review and Applicable Law.*

■■■■■■

¶ 5.   A trial court's order denying a petition for a writ of *habeas corpus* presents a mixed question of fact and law. *State ex rel. McMillian v. Dickey*, 132 Wis. 2d 266, 276, 392 N.W.2d 453 (Ct. App. 1986). Factual determinations will not be reversed unless clearly erroneous. *Id.* Whether a writ of *habeas corpus* is available to the party seeking relief is a question of law, which we review independently. *Id.*; *see State ex rel. Woods v. Morgan*, 224 Wis. 2d 534, 537, 591 N.W.2d 922 (Ct. App. 1999). With rare exception, most published cases con-

---

[2] The trial court assumed, without deciding, that Onapolis had standing to seek the protections provided in the United States/Australia Extradition Treaty. The State has raised the standing issue in its response briefs. We have chosen, however, to resolve the issues raised on appeal on the same grounds as the trial court. Thus, we need not address the standing issue.

sidering the issues of specialty and extradition in a *habeas corpus* challenge are adjudicated in federal courts and subject to plenary review. *See United States v. Saccoccia*, 58 F.3d 754, 767 (1st Cir. 1995). Where, as here, we are reviewing the trial court's interpretation of the principles of specialty, we concur with the position of the State and shall apply a plenary or independent standard of review.

■

¶ 6.   This appeal introduces us to the field of international extradition and a limiting principle called the Rule of Specialty. International extradition contemplates "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902).

■

¶ 7.   The Rule of Specialty generally requires that an extradited defendant be tried for the crimes on which extradition has been granted, and none other. *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987). The enforcement of the rule is founded primarily on international comity. *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir. 1987). The requesting court must "live up to whatever promises it made in order to obtain extradition" because preservation of the institution of extradition requires the continuing cooperation of the surrendering state. *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986). Because the doctrine is grounded in international comity rather than in some right of the defendant, the Rule of Specialty may be waived by the asylum state. *Id.*

825

¶ 8. Specialty "is not a hidebound dogma, but must be applied in a practical, commonsense fashion. Thus, obeisance to the principle of specialty does not require that a defendant be prosecuted only under the precise indictment that prompted his extradition, or that the prosecution always be limited to specific offenses enumerated in the surrendering state's extradition order." *Saccoccia*, 58 F.3d at 767 (citations omitted). In keeping with this rubric, the principle of specialty does not impose any limitation on the particulars of the charges lodged by the requesting nation, nor does it demand departure from the forum's existing rules of practice, such as rules of pleading, evidence or procedure. *Id.*

¶ 9.   In the final analysis then, the inquiry into the Rule of Specialty comes down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifest intentions. *See United States v. Cuevas*, 847 F.2d 1417, 1427–28 (9th Cir. 1988). Phrased another way, the question is whether the surrendering state would deem the conduct for which the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited. *See id.*

¶ 10.   The question we shall examine is whether the actions taken by the State of Wisconsin in detaining Onapolis for a parole violation and subsequent sentencing violated the Rule of Specialty. In essence, Onapolis proffers two arguments to support his claim of circuit court error in dismissing his petition for a writ of *habeas corpus*.

826

¶ 11. First, he claims the circuit court erred when it improperly relied on the two-pronged test set forth in *United States v. Sensi*, 879 F.2d 888 (D.C. Cir. 1989), to determine whether the Rule of Specialty applied in his case. Second, he claims the court failed to apply the precedent enunciated in *United States v. Rauscher*, 119 U.S. 407 (1886), by which he alleges his detention in Wisconsin is a violation of the Rule of Specialty. A subset to this contention is his claim that the basis for his detention was not an extraditable offense under the United States/Australia Extradition Treaty. We shall examine each challenge in turn.

## B. Application of United States v. Sensi.

¶ 12. In *Sensi*, the Court examined a treaty between the United Kingdom and the United States. Sensi was charged with mail fraud, possession or receipt of stolen securities, first-degree theft, and transportation in interstate and foreign commerce of stolen securities and money. *Id.*, 879 F.2d at 891. He argued "that none of the 26 counts of the indictment were offenses on which his extradition was based[.]" *Id.* at 895. He asserted that "the British magistrate who extradited him set out 18 counts of theft." *Id.* As a consequence, he claimed that "the United States could not charge him with the various offenses contained in the indictment, because th[e]se offenses were not 'listed before the magistrate.' " *Id.* (citation omitted).

¶ 13. The Rule of Specialty as expressed in Article XII of the United Kingdom/United States treaty provided: "A person extradited shall not be detained or proceeded against in the territory of the requesting Party [in the present case, the United States] for any offense other than *an extraditable offense established by*

827

*the facts in respect of which his extradition has been granted . . . .*" *Sensi,* 879 F.2d at 895 (emphasis and brackets in original).

¶ 14. The court went on to explain that the treaty: "[S]et out the two requirements that must be met for each count of the indictment. First, the charge must be 'an extraditable offense.' Second, the charge must be 'established by the facts in respect of which [the defendant's] extradition has been granted.' " *Id.* (citation omitted; brackets in original).

¶ 15. In reflecting on the second requirement, the court further explained: "What the doctrine of specialty requires is that the prosecution be 'based on the same facts as those set forth in the request for extradition.' " *Id.* (citation omitted).

¶ 16. Onapolis accepts the holding of *Sensi* as far as it goes, but asserts the Rule of Specialty as expressed in other extradition treaties is more restrictive in its application. He points to *United States v. Khan,* 993 F.2d 1368, 1374 (9th Cir. 1993), wherein the Rule of Specialty was incorporated in an extradition treaty between the United States and Pakistan. In *Khan,* the court distinguished the *Sensi* formula:

> In *Sensi,* however, the operative extradition treaty contained the following language: " 'A person extradited shall not be [prosecuted] . . . for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted.' " *Id.* [, 879 F.2d] at 895 (quoting 28 U.S.T. 233). The operative treaty in this case contains the following language: "A person surrendered can in no case be [prosecuted] . . . for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place."

*Khan,* 993 F.2d at 1374 (emphasis in original omitted;

brackets in original). Recognizing how *Sensi* has been distinguished, Onapolis then engages in an "*a pari*" argument by asserting, as in the treaty in *Khan*, the Rule of Specialty embodied in the treaty in the instant case, does expressly "limit detention, prosecution, and punishment to only those offenses for which extradition was granted." To support his contention, he cites paragraphs (2) and (4) of Article XIV of the United States/Australia Treaty which, where relevant, read:

## ARTICLE XIV

. . . .

(2) Except as provided in paragraph (1) of this Article, a person extradited under this Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted, or be extradited by that State to a third State . . . .

. . . .

(4) This Article does not apply to offenses committed after the extradition.

¶ 17. Onapolis's argument fails for two reasons. First, he neglects to recite paragraph (1) of Article XIV which affirmatively declares: "A person extradited under this Treaty may be detained, tried or punished in the territory of the requesting State for any offense mentioned in Article II[3] for which the person could be convicted upon proof of the facts upon which the request for extradition was based."

---

3

Article II

(1) Persons shall be delivered up according to the provisions of this Treaty for any of the following offenses provided these

¶ 18. It is abundantly clear that paragraph (2) recognizes that the provisions of paragraph (1) are an exception to its restrictive language, thereby allowing a broader application.

■

¶ 19. Second, both the United Kingdom/United States Treaty and United States/Australia Treaty require the existence of an extraditable offense and *established facts or proof of facts* which formed the basis for the extradition. The trial court, in denying the challenge to Onapolis's detention in Wisconsin, declared that for proper detention, the detention itself must be "based upon the same facts as petitioner was extradited for." The State argues that, like the Rule of Specialty expressed in *Sensi,* and not as limited as set forth in *Khan,* under the Rule of Specialty expressed in this case, "an extradited person can be detained, tried or

offences are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year or by death:

. . . .

15. Obtaining any property, money or valuable securities by false pretenses or other form of deception.

. . . .

18. Receiving any property, money or valuable securities knowing the same to have been unlawfully obtained.

. . . .

(5) If extradition is requested for any offense mentioned in a preceding paragraph of this Article and that offense is punishable under the laws of both Contracting Parties by a term of imprisonment exceeding one year or by death, that offense shall be extraditable under the provisions of this Treaty whether or not the laws of both Contracting Parties would place that offense within the same category of offenses made extraditable by that preceding paragraph of this Article and whether or not the laws of the requested State denominate the offense by the same terminology.

punished for any extraditable offense established by the facts in respect of which his extradition has been granted." The State thus contends that the language examined in both this case and *Sensi* are substantially equivalent and thus the trial court did not err in its reliance upon *Sensi*. We agree. The circuit court's application of the second prong of *Sensi* was a reasonable paraphrase of the second *Sensi* requirement. Thus, there was no error.

## C. Application of United States v. Rauscher.

¶ 20.  Onapolis contends that the circuit court, in distinguishing *Rauscher*, failed to properly apply its essential holding which supports his claim that his detention violated the Rule of Specialty. In *Rauscher*, the United States Supreme Court decided that because the petitioner was extradited from Great Britain for murder only, he could not be prosecuted in the United States for cruel and unusual punishment against the same victim. *Id.*, 119 U.S. at 432. The offense of cruel and unusual punishment was not an extraditable offense under the laws of the United Kingdom. *Id.* Here, Onapolis claims the core holding of *Rauscher* prevents his detention for parole violation proceedings. We disagree.

¶ 21.  Onapolis reasons as follows. He served a term of confinement on his underlying convictions in Wisconsin for forgery and theft. He was then placed on parole. He claims that the "*de facto* offense" for which he is being detained and punished is a violation of parole/absconding, not fraud and federal tax evasion. He asserts that since "parole violation" is not an extraditable offense under the treaty, *Rauscher* applies. The record demonstrates to the contrary.

831

¶ 22.  Initially, we emphasize that the *Rauscher* principle holds that the indictment in the case was invalid because it charged the defendant with a crime not enumerated in the United Kingdom Treaty. *Id.*

■■■

¶ 23.  Unlike the facts in *Rauscher*, Onapolis agrees that both fraud and federal tax evasion are extraditable offenses under Article II of the United States/Australia Extradition Treaty. He argues, however, contrary to the findings of the court, that he was detained for "Violation of Parole." Yet, he fails to demonstrate how his revocation was not based upon fraud and federal tax evasion.

¶ 24.  The "Notice of Violation, Recommended Action and Statement of Hearing Rights" submitted by Onapolis's parole agent lists five parole violations. Among them are:  escaping supervision and leaving the country; using a false social security number to obtain bank accounts and file tax returns; making, filing and using fraudulent tax returns to obtain home mortgages; and executing a scheme to defraud a bank to obtain money. In its findings of fact, the trial court determined:  "In the Notice of Violation and Violation/Revocation Summary filed by his agent . . . the agent describes the fraud and federal tax evasion charges for which she seeks to revoke petitioner and states that these are the same charges petitioner pled guilty to in federal court."

¶ 25.  Under Article II, both offenses are enumerated as extraditable. In succinct terms, Onapolis fails to show how this trial court finding is clearly erroneous. Consequently, the finding that fraud and federal income tax evasion formed the basis for Onapolis's detention must stand. There is a sound basis in the record for not applying the *Rauscher* rule to the facts of this case, and

Onapolis concedes that fraud and federal tax evasion are extraditable offenses. Thus, his claim that the trial court erred in finding that the offenses with which he was charged were extraditable offenses, fails from its own weight.

¶ 26.   Based on the foregoing, we affirm the trial court's order dismissing the petition for a writ of *habeas corpus.*

*By the Court.*—Order affirmed.