UNITED STATES of America,
Appellee,

v.

Marc K. WEATHERS, Appellant.

No. 98–3006.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 14, 1998.

Decided Aug. 6, 1999.

Beverly G. Dyer, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender.

Rachel Adelman–Pierson, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys.

Before: SILBERMAN, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Defendant Marc Weathers was found guilty on all counts of a six-count indictment arising out of his attempts to arrange for the murder of several witnesses and a prosecutor. He contends that two of his six convictions should be vacated because each charges an offense also included in the remaining four counts. We conclude that defendant waived this claim by failing to raise it before trial. We find that defendant's further contention, that his attorney provided ineffective assistance by failing to assert this claim in a timely manner, must be remanded to the district court for an initial determination.

## I

In a case filed in the Superior Court of the District of Columbia in 1996, Assistant United States Attorney (AUSA) Bernadette Sargeant obtained an indictment charging Weathers with thirty-seven counts of rape and related offenses involving five victims, including a thirteen-year-old child.[1] The presiding judge ordered the five rape cases severed for separate trials. Prior to trial on the first rape case,

---

1. The United States Attorney's Office for the District of Columbia prosecutes offenses in both the United States District Court and the local Superior Court. *See United States v. Brooks,* 966 F.2d 1500, 1503 (D.C.Cir.1992).

an informant told Sargeant that defendant had plotted to kill the five victims to prevent them from testifying. The trial was postponed, and after investigation Sargeant obtained a second Superior Court indictment charging Weathers with two counts of obstruction of justice.

In March 1997, just weeks before the rescheduled rape trial was set to begin, a second informant told the FBI that Weathers was trying to hire him to arrange the killing of both the rape victims and the prosecutor. At the government's request, the informant met with Weathers and recorded a conversation in which defendant said he would pay $1,000 in advance and $19,000 after AUSA Sargeant was killed. The plan required the informant to hire a hit man, and provided that defendant's friend on the outside, Maurice Logan, would make the necessary payments. 9/30/97 Tr. at 6–8, 10–11, 15–19.

On March 19, 1997, Detective Larry Best of the Metropolitan Police Department, posing as a hit man, met with Weathers in jail and discussed the details of the murder-for-hire scheme. Weathers instructed Detective Best that he should first kill the victim in the upcoming trial, who lived on Hayes Street. "I need Hayes done first," defendant said. App. 19; 9/29/97 Tr. at 138–40. "Maybe you can blow that [expletive deleted] up." App. 23. With respect to AUSA Sargeant, whom he referred to as the "DA," Weathers first said that killing her "ain't gonna do nothing but slow the proces[s] ... cause see if she gone they just put another one in." *Id.* at 19. Later, however, defendant said: "I just want her gone. You know what I'm saying. I just want 'em gone. Set an example.... I don't really got no ... special way. I just want it done. You know what I'm saying. Easiest way for you." *Id.* at 20, 22. Weathers told Best that he could get his payment for the

killings from Weathers' friend Logan and a woman named Mattie. *Id.* at 15–19.

On March 26, 1997, the FBI conducted a search of Maurice Logan's apartment, in which it found a letter from defendant dated March 9. 9/29/97 Tr. at 150–53. In that letter, Weathers urged Logan to burn down the witnesses' homes to keep them from testifying. The letter read, in part:

> [T]hese people are trying to give me life without parole, and we both know I can't do that number, so I need you to get at a couple of these bitches for me. You don't have to kill them, just burn they house down while they in it, or something, so they won't come to court. You know if the situation was reversed, I'd do it for you.... [T]hey don't have a case without these bitches, and they ain't going to spend no money hiding everybody.

*Id.* at 180–81.

On April 22, 1997, Weathers was indicted in United States District Court for plotting against the witnesses and prosecutor in his Superior Court cases. The indictment charged him with: (1) using facilities of interstate commerce in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958; (2) threatening to injure a person (the rape victims), in violation of D.C. Code § 22–2307; (3) obstructing justice (based on the threats against the rape-victim witnesses), in violation of D.C. Code § 22–722(a)(6); (4) threatening a federal official (AUSA Sargeant), in violation of 18 U.S.C. § 115; (5) threatening to injure a person (Sargeant), in violation of D.C. Code § 22–2307; and (6) obstructing justice (based on the threats against Sargeant), in violation of D.C. Code§ 22–722(a)(6). App. 11–14.[2] The defendant was convicted on all counts, and was sentenced to: (1) ten years imprisonment on Count One; (2) 80–240 months on each of Counts Two and Five; (3) fifteen years to life on both Counts Three and Six; and (4)

---

**2.** Federal and District of Columbia offenses may be charged in the same indictment and prosecuted in the United States District Court for the District of Columbia. D.C.Code § 11–502(3); *see United States v. Sumler,* 136 F.3d 188, 190 (D.C.Cir.1998).

five years imprisonment on Count Four. The court ordered Counts Two, Three, Five, and Six to run consecutive to each other, but concurrent with consecutive sentences on Counts One and Four.

## II

 Defendant contends that his indictment charged the same offense in more than one count, a problem known as "multiplicity." *See* 1A CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE §§ 142, 145, at 7–8, 86 (3d ed.1999). Because the Double Jeopardy Clause protects not only against "a second prosecution for the same offense" after acquittal or conviction, but also against "multiple punishments for the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), defendant contends that two of his convictions must be vacated. *See Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). Whether defendant has in fact been punished twice for the same offense, however, depends upon what "the legislature intended." *Id.*; *see Missouri v. Hunter*, 459 U.S. 359, 366–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).[3]

 Defendant's first contention is that his conviction on Count Four for threatening a federal official (AUSA Sargeant) in violation of 18 U.S.C. § 115, and his conviction on Count Five for threatening to injure a person (also Sargeant) in violation of D.C.CODE § 22–2307, constitute two convictions for the same offense. To determine whether Congress intended two statutory provisions to proscribe the same offense, the Supreme Court has applied the rule set forth in *Blockburger v. United States*: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two of-

fenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Hunter*, 459 U.S. at 366–67, 103 S.Ct. 673. Defendant contends that the offenses charged under 18 U.S.C. § 115 and D.C.CODE § 22–2307 constitute a single offense under *Blockburger*.

Section 115(a) makes it a crime to "threaten[ ] to assault, kidnap, or murder, a United States official, . . . with intent to impede, intimidate, or interfere with such official, . . . while engaged in the performance of official duties. . . ." D.C.CODE § 22–2307 makes it a crime, within the District of Columbia, to "threaten[ ] . . . to injure the person of another." As is apparent from a reading of the two statutes, some facts required to prove Count Four are not required to prove Count Five (for example, that the threatened person is "a United States official" and that the threat was made with "intent to impede"). Defendant contends, however, that there is no fact required to prove Count Five that is not also required to prove Count Four. If true, this would make the local crime charged in Count Four the equivalent of a "lesser included offense" of the federal crime charged in Count Five. Therefore, an indictment charging both would fail the *Blockburger* test. *See Rutledge*, 517 U.S. at 297, 116 S.Ct. 1241.

The government disputes this conclusion. It contends that the D.C. statute does have an additional element not contained in the federal statute. Pointing to model jury instructions for D.C.CODE § 22–2307, and to *United States v. Baish*, 460 A.2d 38, 42 (D.C.1983), the government argues that the D.C. statute requires a threat of *serious* bodily harm. By con-

---

**3.** Although the Double Jeopardy Clause does not bar multiple punishments under federal and state law, a defendant may not be punished twice for the same offense under both the United States Criminal Code and the Dis-

trict of Columbia Criminal Code because both were adopted by Congress. *See Sumler*, 136 F.3d at 191; *United States v. Shepard*, 515 F.2d 1324, 1331 (D.C.Cir.1975).

trast, the federal statute is violated by a threat of mere "assault," which, the government contends, may involve a threat of nothing more serious than being spat upon or hit with an egg. Gov't Br. at 15–16 & n.14. Since (if correct) this means the D.C. law has an element not found in the federal statute (the threat of serious harm), the government contends that charging and convicting defendant of both does not fail *Blockburger.*

■ Defendant's second contention is that we must vacate either his conviction on Count Three, for violating D.C.CODE § 22–722(a)(6) by obstructing justice based on the threats he made against the rape-victim witnesses, or his conviction on Count Six, for violating the same statute based on the threats he made against Sargeant. He argues that these also constitute a single offense. Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the "unit of prosecution" under the statute. *See Sanabria v. United States,* 437 U.S. 54, 70 n. 24, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *see also Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (holding that interstate transportation of two women on same trip in same vehicle constitutes single violation of Mann Act, 18 U.S.C. § 2421).

D.C. CODE § 22–722(a)(6) provides that

[a] person commits the offense of obstruction of justice if that person [c]orruptly, or by threats of force, any way obstructs or impedes or endeavors to obstruct or impede the due administration of justice in any official proceeding.

Defendant contends that the unit of prosecution intended by the statute is an "official proceeding," and hence that any number of threats against any number of witnesses on any number of occasions may be charged only once, as long as they all relate to a single such proceed-

ing. The government responds by asserting that the District of Columbia Court of Appeals has routinely permitted multiple convictions for obstruction of justice (albeit under a different subsection of the statute), where the defendant has impeded multiple witnesses in a single trial. *See* Gov't Br. at 22 (citing *Skyers v. United States,* 619 A.2d 931 (D.C.1993) (prosecution under D.C.CODE § 22–722(a)(1)); *Smith v. United States,* 591 A.2d 229 (D.C.1991) (same)). Hence, in the government's view, Counts Three and Six are not multiplicitous.

### III

■ Although it denies that its indictment is multiplicitous, the government argues that we need not resolve the merits of defendant's multiplicity challenges because he failed to raise them before trial, or at any time prior to this appeal. We agree. Rule 12(b)(2) of the Federal Rules of Criminal Procedure states:

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion . . . . . The following must be raised prior to trial: . . . Defenses and objections based on defects in the indictment or information. . . .

·FED.R.CRIM.P. 12(b)(2). Rule 12(f) provides that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." FED.R.CRIM.P. 12(f). According to Circuit precedent, multiplicity claims of the kind presented here are defenses based on "defects in the indictment" within the meaning of Rule 12(b)(2), and hence are waived under Rule 12(f) if not raised prior to trial. This means that unless "cause" is shown, they "may not later be resurrected" on appeal. *Davis v. United States,* 411 U.S. 233, 242, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Because defendant

has asserted no "cause" for granting relief from the waiver (other than his claim of ineffective assistance of counsel, which we discuss separately below), we must affirm Weathers' convictions.

In *United States v. Harris*, 959 F.2d 246, 250–51 (D.C.Cir.1992), the defendants challenged their convictions for both conspiracy to distribute cocaine and conspiracy to use firearms during a drug trafficking offense. Those convictions subjected them to multiple sentences for the same offense, defendants argued, since under *Blockburger* the counts were "substantially identical because there was only one alleged conspiracy." *Id.* at 250. Defendants, however, had "not even allude[d] to such an objection prior to a motion they made midway through the trial." *Id.* We therefore held that under Rule 12, defendants had waived their claims and could not revive them on appeal. *Id.*

In reaching this result, *Harris* expressly rejected the argument "that a multiplicity objection is not included within the defects contemplated by Rule 12(b)(2), because it is a defect in the sentencing, not in the indictment." *Id.* To the contrary, the court held that "if the multiplicity objection could have been raised based on the indictment, Rule 12(b)(2) applies." *Id.* "The purpose of the rule," *Harris* said, "is to compel defendants to object to technical defects in the indictment early enough to allow the district court ... to permit the prosecution to accommodate meritorious challenges, and to do so without disrupting an ongoing trial." *Id.* The court then quoted extensively from the Supreme Court's opinion in *Davis v. United States*, which identified the same underlying purpose for the waiver provision of Rule 12:

> If [Rule 12(b)(2)] time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in the hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult.

*Id.* (quoting *Davis*, 411 U.S. at 241, 93 S.Ct. 1577) (alteration in *Harris*). "A claim of multiplicity," we concluded, "at least in the typical case where the defect appears on the face of the indictment, falls clearly within the letter and spirit of the rule." *Id.* at 250–51, 93 S.Ct. 1577.

■ Two years later, in *United States v. Clarke*, 24 F.3d 257 (D.C.Cir.1994), we applied *Harris* to defendants' claim that they had been convicted twice for the violation of a single statute. " '[O]bjections based on defects in the indictment or information,' " *Clarke* said, "including an objection to the indictment on the grounds of multiplicity, must be raised before trial." *Id.* at 261 (quoting FED. R.CRIM. P. 12(b)(2) and citing *Harris*, 959 F.2d at 250–51). Because defendants had not objected to the indictment until after the jury was selected, the court held that "any complaint based on multiplicity was waived." *Id.* (citing FED.R.CRIM.P. 12(f) and *Davis*, 411 U.S. at 242, 93 S.Ct. 1577). *See also United States v. Scott*, 464 F.2d 832, 833 (D.C.Cir.1972) ("[C]onstitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived.") (citing FED.R.CRIM.P. 12(b)(2)).[4]

---

**4.** In *United States v. Anderson (Anderson I)*, 39 F.3d 331, 353–54 (D.C.Cir.1994), a panel of this court held that defendant's claim that "his sentence on multiplicitous counts [was] illegal" could be raised on appeal even though it had not been raised before trial. The full court, however, granted rehearing en banc and vacated the judgment. *Id.* at 361

This case is on all fours with *Harris* and *Clarke*. Weathers challenges his convictions on multiplicity grounds; he makes both the two-statutes-charge-one-offense claim considered in *Harris* and the single-statute-charges-only-one-offense claim reviewed in *Clarke*. Like defendants Harris and Clarke, Weathers did not object before trial. And as in *Harris* and *Clarke*, the alleged defect appears on the face of the indictment—a point which defendant concedes and upon which he even insists, *see* Def. Br. at 20; Reply Br. at 8, 11, 18.[5] Counts Four and Five expressly charge Weathers with threatening the same person (Sargeant) during the same time period, and specifically list the two statutes assertedly violated. App. 13. Since a *Blockburger* claim focuses exclusively on the statutory elements of the offenses, *see United States v. White*, 116 F.3d 903, 931 (D.C.Cir.1997), the face of the indictment presents all the information defendant required to notice the alleged error. Similarly, Counts Three and Six expressly charge Weathers with violating a single statute by impeding the same proceedings during the same time period, the only difference being that Count Three refers to the threats against the rape-victim witnesses while Count Six refers to the threats against AUSA Sargeant. App. 12–14. If there is a multiplicity problem in these counts, then it is, as defendant himself insists, "clear from the plain language of § 22–722(a)(6) and the indictment," Reply Br. at 18, and therefore subject to Rule 12(b)(2) and (f).[6]

The "spirit of the rule" identified in *Harris* is also consistent with a finding of waiver in this case. *See Harris*, 959 F.2d at 250–51. Had defendant raised his *Blockburger* claim before trial, the government could have filed a superseding indictment, replacing Counts Four and Five with three new counts for making threats against Sargeant on three separate occasions—the threat recorded by the informant, by the undercover detective, and in the letter found in Logan's apartment. *See generally United States v. Lindsey*, 47 F.3d 440, 444 (D.C.Cir.1995). Similarly, the government could have cured any defect based on a "per proceeding" unit of prosecution for obstruction by replacing Counts Three and Six with five new counts, one for each of the five severed rape trials. As the Supreme Court said in *Davis*, if Rule 12(b)(2)'s "time limits [had been] followed," the alleged defect might

---

(order of Feb. 9, 1995). As a consequence, the panel's decision has "no precedential value." *National Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 293 (D.C.Cir.1993). Rehearing en banc was "granted on the limited issue" of the merits of the defendant's multiplicity claim, and the court did not address the question of waiver. *United States v. Anderson (Anderson II)*, 59 F.3d 1323, 1325 (D.C.Cir.1995) (en banc); *see Whitacre v. Davey*, 890 F.2d 1168, 1172 (D.C.Cir.1989) ("We cannot count as controlling a decision that never touched upon the issue we confront."). Accordingly, *Harris* and *Clarke* stand as the law of the Circuit.

5. Defendant insists that the multiplicity violation is clear on the face of the indictment as support for his argument that it constitutes plain error under FED.R.CRIM.P. 52(b). *See* discussion *infra* pp. 954–55.

6. Counts Three and Six each charged Weathers with impeding two proceedings, the original (unsevered) Superior Court rape case and the Superior Court obstruction case. App. 12–14. Hence, as the government contends, if defendant had timely objected, any multiplicity problem might have been repairable through a bill of particulars stating that each count referred to a different Superior Court case. The fact that the problem was curable, however, does not take it outside the scope of Rule 12(b)(2). To the contrary, the purpose of the Rule is to ensure that "inquiry into an alleged defect may be concluded and, if necessary, cured." *Davis*, 411 U.S. at 241, 93 S.Ct. 1577. *See Clarke*, 24 F.3d at 261 (holding multiplicity claim waived because not raised before trial notwithstanding trial court's attempt to cure by instructing jury that separate counts referred to drugs found at different locations). As long as "the multiplicity objection *could have been raised* based on the indictment, Rule 12(b)(2) applies." *Harris*, 959 F.2d at 250 (emphasis added). Weathers does not dispute that he could have raised his multiplicity objection based on the face of his indictment.

have been "cured before the court, the witnesses, and the parties [went] to the burden and expense of a trial" by the "simpl[e]" expedient of "a new indictment prior to trial." *Davis,* 411 U.S. at 241, 93 S.Ct. 1577 (quoted in *Harris,* 959 F.2d at 250).

▮ In his reply brief, defendant urges us not to follow *Harris,* contending that the Supreme Court's subsequent decision in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), puts *Harris'* continuing validity in doubt. *Olano* concerned the meaning of Federal Rule of Criminal Procedure 52(b),[7] rather than Rule 12. Rule 52(b), the Court said, gives courts of appeals "a limited power to correct errors that were forfeited because not timely raised in district court." *Id.* at 731, 113 S.Ct. 1770. "Forfeiture," the court noted, is different from "waiver." When an error is forfeited, it is not "extinguish[ed]" but instead is subject to review under the plain error standard of Rule 52(b). *Id.* at 733, 113 S.Ct. 1770. When an error is waived, on the other hand, it is extinguished; the result is that there is no error at all and an appellate court is without authority to reverse a conviction on that basis. *Id.* at 733–34, 113 S.Ct. 1770. Finally, "[w]hereas forfeiture is the failure to make the timely assertion of a right," *Olano* described "waiver [as] the 'intentional relinquishment or abandonment of a known right.'" *Id.* at 733, 113 S.Ct. 1770 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

Weathers contends that the failure to raise a multiplicity (or any other) claim before trial cannot by itself amount to the intentional relinquishment of a known right. Thus, he argues, that failure must be considered a forfeiture and not a waiver. From this he concludes that *Olano*

requires that his appeal be reviewed for plain error—effectively overturning *Harris'* holding that a failure to come within Rule 12(b)(2)'s time limits results in the waiver of any claim covered by that Rule.

We cannot agree that *Harris* has been annulled by *Olano.* First, we have continued to apply *Harris* to multiplicity claims even after *Olano* was decided in 1993. *See Clarke,* 24 F.3d at 261.[8] More broadly, we have continued to hold that other claims within the compass of Rule 12(f) are waived if not timely raised. *See United States v. Sobin,* 56 F.3d 1423, 1427 (D.C.Cir.1995) (holding that untimely claims under Rule 12(b)(3) are waived).

Second, *Olano* itself recognized that there is a difference between waiver and forfeiture. While Rule 52(b) does not mention "waiver," Rule 12(f) expressly does. Yet, on defendant's reading, the waiver language of Rule 12(f) would add nothing to the forfeiture principle of Rule 52(b). Defendant's "waiver" of his multiplicity claim under Rule 12(f) would have no consequence other than that it would be reviewed for plain error, the same result as if there were no Rule 12(f). We cannot conclude that the Supreme Court intended to render Rule 12(f) a nullity in a decision that did not even mention it.

Finally, although in the context of its discussion of Rule 52(b) *Olano* said that waiver is the "intentional relinquishment or abandonment of a known right," the Court also noted that "whether the defendant's choice must be particularly informed or voluntary ... depend[s] on the right at stake." *Olano,* 507 U.S. at 733, 113 S.Ct. 1770. The Court further stated that "[a]lthough in theory it could be argued that if the question was not presented to the trial court no error was committed by the trial court, ... this is not the

---

7. Rule 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

8. Although *Clarke* did not discuss *Olano* and Rule 52(b) in the course of finding defendants' multiplicity claim barred by waiver, it did discuss both in deciding that another of defendants' claims was governed by the plain error standard. *See Clarke,* 24 F.3d at 266.

theory *that Rule 52(b) adopts." Id.* at 733, 113 S.Ct. 1770 (emphasis added) (internal quotation omitted). The key question, then, is what theory *Rule 12 adopts* for the rights that come within Rule 12(b)(2). That is not a question we answered on our own in *Harris*; with respect to that issue we did nothing more than follow the path laid down by the Supreme Court in *Davis*.

*Davis* involved a postconviction attack on a defendant's indictment, based on the allegation that there had been unconstitutional discrimination in the selection of the grand jury that issued it. 411 U.S. at 234–35, 93 S.Ct. 1577. Although the defendant had failed to raise the point at trial, he contended that he had not "understandingly and knowingly waived his claim." *Id.* at 236, 93 S.Ct. 1577 (citing *Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461) (internal quotation omitted). He also cited a prior case, *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), in which the Court had held that a failure to raise a Fourth Amendment claim on direct appeal did not bar postconviction relief. 411 U.S. at 239, 93 S.Ct. 1577.[9] The dissent agreed with the defendant, concluding that in the absence of an intentional relinquishment of a known right, defendant's claim should be subject to plain error analysis under Rule 52(b) rather than waiver under Rule 12. *Id.* at 245, 252, 254–57, 93 S.Ct. 1577 (Marshall, J., dissenting).

The Court, however, did not agree. It conceded that defendant had alleged the deprivation of a "substantial constitutional right," *id.* at 243, 93 S.Ct. 1577, but held that Rule 12(b)(2) "[b]y its terms ... applies to both procedural and constitutional defects in the institution of prosecutions." *Id.* at 236, 93 S.Ct. 1577. It also acknowledged its prior opinion in *Kaufman*, but noted that there it "was not dealing with the sort of express waiver provision contained in Rule 12(b)(2) which specifically provides for the waiver of a particular kind of constitutional claim if it be not timely asserted." *Id.* at 239–40, 89 S.Ct. 1068.[10] Where Congress "had not spoken on the subject of waiver," *Davis* said, the Court might adopt its own "particular doctrine of waiver." *Id.* at 242, 93 S.Ct. 1577. The "express waiver provision" of Rule 12(b)(2), however, was a different matter. *Id.* at 240, 93 S.Ct. 1577. That Rule was "promulgated by this Court and ... 'adopted' by Congress," and it "governs by its terms the manner in which the claims of defects in the institution of criminal proceedings may be waived." *Id.* at 241, 93 S.Ct. 1577. According to those terms, the Court held, an untimely claim is waived and "may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of 'cause' which that Rule requires." *Id.* at 242, 93 S.Ct. 1577. *See also Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (citing *United States v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir.1984), for the proposition that "absence of objection is waiver of double jeopardy defense").[11]

9. *Kaufman* was subsequently overruled in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

10. At the time the Court decided *Davis*, the waiver provision now in Rule 12(f) was contained in Rule 12(b)(2) itself. *See* Fed. R.Crim.P. 12(b)(2) (1971).

11. Defendant cites the pre-*Davis* case of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), as one that applied the intentional and knowing standard to waivers of Double Jeopardy rights. Reply Br. at 4–5. The defendant in *Green* was tried for first degree murder and the lesser included

offense of second degree murder. The jury convicted him of the latter but was silent as to the former. Defendant appealed his conviction on the second degree charge, which was overturned on insufficiency of the evidence grounds. 355 U.S. at 185–86, 78 S.Ct. 221. On remand, defendant was retried and convicted on the first degree murder charge despite his pre-trial plea of former jeopardy. *Id.* at 186, 78 S.Ct. 221. The Court held the second conviction a violation of the Double Jeopardy Clause, rejecting the government's contention that merely by appealing his second degree murder conviction defendant had voluntarily and knowingly " 'waived' his con-

■ In sum, *Olano* and *Davis* (and therefore *Harris*) are not inconsistent with each other. Although *Olano* indicates that untimely objections are generally regarded as forfeitures subject to Rule 52(b), *Davis* dictates that untimely objections that come within the ambit of Rule 12(b)(2) must be considered waivers and may not be revived on appeal. We cannot conclude that the Court intended *Olano*, a case which mentioned neither Rule 12 nor *Davis*, to overrule *Davis* by redefining sub silentio the meaning of the word "waiver" in Rule 12.[12]

Finally, defendant seeks some support for his position in the post-*Davis*, pre-*Olano* case of *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). But if anything, *Broce* is contrary to defendant's view. *Broce* held that a defendant's plea of guilty under Federal Rule of Criminal Procedure 11 waives any multiplicity challenge he may have had to his indictment. Although waiver of multiplicity claims as part of a broader voluntary plea of guilty is, of course, distinguishable from waiver based solely on an untimely objection, in *Broce* the Court expressly rejected the defendants' claim that they had not intentionally and knowingly waived their multiplicity challenge because they had not known of it. *Id.* at 572–74, 109 S.Ct. 757.[13]

Defendant focuses on the fact that *Broce* distinguished an earlier case, *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), in which the Court had refused to find that defendant's plea of guilty waived a claim that he had previously been prosecuted for the same crime. But *Broce* distinguished *Menna* on the ground that the nature of defendant's claim in the latter case "precluded" the government "from haling a defendant into court on a charge" at all. *Broce*, 488 U.S. at 575, 109 S.Ct. 757 (quoting *Menna*, 423 U.S. at 62, 96 S.Ct. 241). That is, Menna's claim of former jeopardy was "a claim that ... the charge [was] one which the State may not constitutionally prosecute." *Broce*, 488 U.S. at 575, 109 S.Ct. 757 (quoting *Menna*, 423 U.S. at 63 n. 2, 96 S.Ct. 241). A claim of multiplicity, by contrast, does not bar prosecution or prevent the government from haling a defendant into court—as the defendant himself recognizes, Reply Br. at 6–7. *See Ohio v. Johnson*, 467 U.S. 493, 500, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."); *see also Ball v. United States*, 470 U.S. 856, 859–61 & n. 7, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). There is thus nothing in *Broce*, or in *Menna*, to bar the application of Rule 12's waiver provision to Weathers' claim of

stitutional defense of former jeopardy to a second prosecution on the first degree murder charge." *Id.* at 191, 78 S.Ct. 221.

*Green* does not assist defendant in the instant case. Unlike the provision in Rule 12 that expressly makes the failure to timely object a waiver, there is no rule that makes the filing of an appeal a waiver. Nor is there any logical reason to regard an appeal as a waiver. Rather, as the Court ultimately concluded, the notion that an appeal constitutes a waiver was nothing more than the "wholly fictional" construct of government counsel. *Id.* at 192, 78 S.Ct. 221.

12. Of course, even if we thought it did, it is not for the lower courts to conclude that the Supreme Court's "more recent cases have, by implication, overruled an earlier precedent."

*Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Id.* (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)) (alteration omitted).

13. Defendants' trial counsel submitted an affidavit stating that he had not discussed his clients' Double Jeopardy rights with them, nor had his clients considered the possibility of raising that defense before entering their plea. *Id.* at 572–73, 109 S.Ct. 757.

multiplicity.[14]

In sum, *Harris* and *Davis* continue to guide our course here. Together, they compel the conclusion that defendant has waived his multiplicity claims by failing to raise them before trial.

## IV

■ Defendant contends that his trial counsel's failure to raise his multiplicity claims in a timely manner constituted ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The government argues, and defendant acknowledges, that when a defendant has not previously raised such a claim before the district court, our general practice is to remand it for an evidentiary hearing. Gov't Br. at 25; Def. Br. at 21; *see United States v. Soto*, 132 F.3d 56, 59 (D.C.Cir.1997); *United ed States v. Fennell*, 53 F.3d 1296, 1304 (D.C.Cir.1995). Defendant notes, however, that there is an exception to this usual practice where no factual issues are in dispute and the proper disposition is clear. *See Soto*, 132 F.3d at 59. In his reply brief, Weathers contends that this is such an exceptional case because "the government raises no factual disputes or arguable trial strategy that would limit review by this Court." Reply Br. at 9.

■ A *Strickland* claim has two components. First, "the defendant must show that counsel's performance was deficient." 466 U.S. at 687, 104 S.Ct. 2052. Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* With regard to the first requirement,

"the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotation omitted).

Notwithstanding the argument made in his reply brief, at oral argument defendant conceded that his trial counsel's failure to raise the multiplicity claims before trial might have been predicated on a tactical choice. As discussed in Part III, had defense counsel raised the claims pretrial, not only might the defects have been repaired, *see supra* note 6, they might have been repaired by increasing the number of counts arrayed against defendant, *see supra* page 11. Faced with that possibility, defense counsel might well have opted to leave the indictment as it stood rather than risk making matters worse for his client. Recognizing that defense counsel's silence may therefore have represented a strategic decision, at oral argument defendant changed course and joined the government in requesting a remand of his ineffective assistance claim for initial determination by the district court. That is clearly the proper disposition of this issue. *See Fennell*, 53 F.3d at 1304 (stating that ineffective assistance claim "cannot be resolved without a hearing in district court" where defense counsel's decisions "could have involved a reasoned tactical choice").

## V

For the foregoing reasons, we hold that defendant has waived his multiplicity claims. His charge of ineffective assis-

14. Indeed, unlike a claim of multiplicity, a claim of former jeopardy like that at issue in *Menna* may not fall within Rule 12(b)(2) at all. *But see Scott*, 464 F.2d at 833. The Advisory Committee Notes regarding Rule 12(b)(1) and (b)(2) specifically state that "such matters as former jeopardy, former conviction, [and] former acquittal" fall within the permissive category of defenses "which at the defendant's option may be raised by motion, failure to do so, however, not constituting a waiver." FED.R.CRIM.P. 12 Advisory

Committee Note (1944 Adoption) (Note to Subdivision (b)(1) and (2)), 18 U.S.C.App., p. 744. These three prohibitions all arise out of the Double Jeopardy Clause's successive prosecution prong, *see United States v. Andrews*, 146 F.3d 933, 936 n. 3 (D.C.Cir.1998). They are therefore distinguishable from a claim of multiplicity (not mentioned by the Advisory Committee) which, to the extent it sounds in Double Jeopardy, is rooted in the multiple punishments prong. *See Ohio v. Johnson*, 467 U.S. at 499, 104 S.Ct. 2536.

tance of counsel is remanded to the district court.