**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

KEITH E. ANDERSON,
    *Defendant-Appellant.*

No. 05-30211

D.C. No.
CR-02-00423-
001-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief District Judge, Presiding

Argued and Submitted
October 16, 2006—Seattle, Washington

Filed December 28, 2006

Before: Dorothy W. Nelson, David R. Thompson, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Thompson

20011

**COUNSEL**

Darla Mondou, Marana, Arizona, for the defendant-appellant.

Eileen J. O'Connor, Alan Hechtkopf, Karen M. Quesnel, and Gregory Victor Davis, Department of Justice, Tax Division,

Washington, D.C., and John McKay, United States Attorney, of counsel, for the plaintiff-appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Defendant-Appellant Keith E. Anderson appeals his convictions and sentence for conspiracy to defraud the United States, conspiracy to commit mail and wire fraud, aiding and assisting the filing of materially false income tax returns, mail fraud, wire fraud, conspiracy to commit money laundering, and international money laundering. Anderson received a sentence of twenty years in prison, three years of supervised release, and monetary penalties.

Anderson contends that his convictions and sentence should be reversed because his appeal of the annulment of his Costa Rican citizenship was pending in Costa Rica when he was extradited to the United States to stand trial for the above-listed offenses. Therefore, he asserts the district court lacked personal jurisdiction over him.

Anderson also argues for the first time in his reply brief filed in this Court that his convictions for money laundering and conspiracy to commit money laundering should be vacated under the doctrines of dual criminality and specialty because the Costa Rican court specifically held that the money laundering offenses did not satisfy the terms of the extradition treaty and refused to grant the United States' extradition request for those charges.[1]

---

[1]"Dual criminality" and "specialty" are doctrines incorporated in the United States-Costa Rica Extradition Treaty. Extradition Treaty, U.S.-Costa Rica, art. 2 ¶ 1 and art. 16, Dec. 4, 1982, S. Treaty Doc. No. 98-17. "Dual criminality requires that an accused may be extradited only if the

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm all of Anderson's convictions except his convictions for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and international money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(2)(A). We remand this case to the district court for consideration of Anderson's dual criminality and specialty defenses to the money laundering charges (counts 98-104), and for resentencing as may be appropriate.

## I.   BACKGROUND

In 1996, Anderson and his brother, Lowell Wayne Anderson, formed an organization called Anderson's Ark and Associates ("AAA") to assist United States taxpayers in avoiding income taxes. Anderson then lived in the State of Washington. In 1999, he moved to Costa Rica and established AAA's Costa Rican headquarters. On October 9, 2001, Anderson petitioned for naturalized Costa Rican citizenship. Just over a month later, the United States government filed a criminal complaint against Anderson in the Western District of Washington, charging him with conspiracy to defraud the United States under 18 U.S.C. § 371 in connection with his AAA activities. The government also obtained a warrant for Anderson's arrest.

In early February 2002, Anderson was detained in Costa Rica at the United States' behest. The United States filed a

---

alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations." *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) (quoting *United States v. Saccoccia*, 18 F.3d 795, 800 n.6 (9th Cir. 1994)). "Specialty" requires that an extradited person be tried only "for the crime[s] for which he has been extradited." *Benitez v. Garcia*, 449 F.3d 971, 976 (9th Cir. 2006) (quoting *Johnson v. Browne*, 205 U.S. 309, 316 (1907)). In Costa Rica, money laundering is punishable as a criminal offense only if the laundered money is from drug trafficking, and in Anderson's case the laundered funds were not derived from that activity.

formal request for extradition with the Costa Rican government in March 2002. Then, on July 3, 2002, Anderson's Costa Rican citizenship petition was granted; three weeks later, a Costa Rican criminal trial court granted the United States' extradition request. Shortly thereafter, the Costa Rican government annulled Anderson's Costa Rican citizenship.

Anderson filed appeals in Costa Rica, challenging the annulment of his Costa Rican citizenship and the decision of the Costa Rican trial court to grant extradition. On December 4, 2002, before either of these appeals had been decided, Anderson was transported from Costa Rica to Miami by United States government agents.

An eighty-six-count indictment was filed against Anderson in the Western District of Washington on December 10, 2002, and he was transferred to and arraigned in Seattle shortly thereafter. A second superceding indictment was filed on August 11, 2004, adding sixteen counts to the original indictment.

After a thirty-eight-day jury trial in which Anderson represented himself, he was convicted of one count of conspiracy to defraud the United States under 18 U.S.C. § 371, one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, ten counts of aiding and assisting the filing of materially false income tax returns in violation of 26 U.S.C. § 7206(2), forty-four counts of aiding and/or assisting the preparation of fraudulent tax returns in violation of 26 U.S.C. § 7206(2), eighteen counts of mail fraud in violation of 18 U.S.C. §§ 2 and 1341, eleven counts of wire fraud in violation of 18 U.S.C. §§ 2 and 1342, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and six counts of international money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(2)(A). Anderson was sentenced to twenty years in prison, three years of super-

vised release, $36,525,860 restitution,[2] and a $9,200 penalty assessment. This appeal followed.

## II.   STANDARDS OF REVIEW

Jurisdictional issues are reviewed de novo, *see United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004), as are challenges to personal jurisdiction based on the alleged violation of an extradition treaty between the United States and another country. *United States v. Matta-Ballesteros*, 71 F.3d 754, 762 (9th Cir. 1995). Interpretation of an extradition treaty, including whether the doctrines of dual criminality and specialty are satisfied, is also reviewed de novo. *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993) (citing *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987)).

## III.   DISCUSSION

### A.   Personal Jurisdiction

[1] The general rule under the *Ker/Frisbie* line of cases is that the means used to bring a criminal defendant before a court do not deprive that court of personal jurisdiction over the defendant. *United States v. Alvarez-Machain*, 504 U.S. 655, 661-62 (1992) (citing and quoting *Ker v. Illinois*, 119 U.S. 436 (1886); *Frisbie v. Collins*, 342 U.S. 519 (1952)). Nevertheless, the *Ker/Frisbie* doctrine does not apply, and a court is deprived of jurisdiction over an extradited defendant, if either: (1) the transfer of the defendant violated the applicable extradition treaty, or (2) the United States government engaged in "misconduct 'of the most shocking and outrageous kind' " to obtain his presence. *Matta-Ballesteros*, 71 F.3d at 762-64 (quoting *United States v. Valot*, 625 F.2d 308, 310 (9th Cir. 1980)).

---

[2]The amount of restitution was increased to $45,794,980.05 in an amended judgment filed October 20, 2005.

### 1. Alleged Treaty Violations

**[2]** Our analysis of the challenge to personal jurisdiction begins with the express terms of the applicable extradition treaty. *See Alvarez-Machain*, 504 U.S. at 663. The United States-Costa Rica Extradition Treaty does not oblige either country to refrain from granting extradition if an appeal regarding the defendant's citizenship status is pending. *See* Extradition Treaty, U.S.-Costa Rica, Dec. 4, 1982, S. Treaty Doc. No. 98-17 (1991). Instead, the treaty provides:

> The Requested State shall undertake all available legal measures to suspend proceedings for the naturalization of the person sought until a decision is made on the request for extradition and, if that request is granted, until that person is surrendered.

*Id.* art. 8, ¶ 2.

**[3]** Thus, under the treaty, Costa Rica was required to suspend its decision on Anderson's request for naturalized citizenship until after it surrendered Anderson to the United States. The United States' extradition request was filed in March 2002. The Costa Rican trial court granted extradition on July 24, 2002, and Anderson was removed to Florida on December 4, 2002. During the period between March and December 2002, naturalization proceedings relating to Anderson should have been suspended. Instead, Anderson was granted Costa Rican citizenship on July 3, 2002. That grant of citizenship was a violation of the extradition treaty. Costa Rica's later annulment of that improper grant of citizenship and suspension of any further naturalization proceedings, including appeals, was therefore proper. In addition, no terms of the treaty were violated by Anderson's removal to the United States while his citizenship appeal was pending.

**[4]** No provision of the United States-Costa Rica Extradition Treaty requires that extradition be postponed until the

highest court of the country from which extradition is requested has ruled on that request. Article twelve provides that "[a] person detained pursuant to the Treaty shall not be released until the extradition request has been finally decided." *Id.* art. 12. "Surrender," however, is the term used in the treaty to describe the physical transfer of a person whose extradition has been granted, as opposed to simple "release" from detention. *Compare id.* art. 13, ¶ 3 ("If the extradition has been granted, surrender of the person shall take place within such time as may be prescribed by the law of the Requested State."), *with id.* art. 12 (quoted above).

**[5]** We conclude that Anderson's removal from Costa Rica to Florida on December 4, 2002, complied with the United States-Costa Rica Extradition Treaty.

## 2.   Outrageous Conduct

Anderson argues that even if his removal did not violate the terms of the United States-Costa Rica Extradition Treaty, the United States government's conduct in removing him during the pendency of his extradition and citizenship appeals was outrageous, and the district court therefore lacked personal jurisdiction over him. The allegedly outrageous conduct Anderson points to includes the timing of his removal — "in the dead of the night" while his appeals were still pending — and the representations made by United States government agents to Costa Rican authorities which may have misled Costa Rica into believing Anderson had an unserved prison sentence in North Carolina. These arguments lack merit.

As stated above, there is no merit to Anderson's argument asserting error by reason of his removal to the United States while his Costa Rican extradition and citizenship appeals were pending. With regard to the North Carolina conviction, the Costa Rican trial court's extradition order makes clear that extradition was granted only for Anderson's conduct in connection with AAA. The only mention of the North Carolina

conviction in the Costa Rican trial judge's opinion is an order requiring Anderson's record of that conviction to be sent to Costa Rica's immigration agency.

[6] In sum, nothing in this case amounts to outrageous conduct for the purpose of obtaining personal jurisdiction over Anderson in the United States district court.

### B. Money Laundering Convictions

In his reply brief filed in this court, Anderson argues for the first time that his convictions for conspiracy to commit money laundering and international money laundering violate the principles of dual criminality and specialty. He contends these convictions should be vacated, and at a minimum he should be resentenced only for his remaining convictions. Anderson also contends his convictions and sentence relating to the money laundering counts constitute outrageous conduct warranting outright reversal on all counts.

[7] We first consider whether Anderson has waived these arguments by failing to raise them in the district court or in his opening brief filed in this appeal. *See Eberle v. City of Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1990). Issues raised for the first time in an appellant's reply brief are generally deemed waived. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) (citing *Eberle*, 901 F.2d at 818). Moreover, Federal Rule of Criminal Procedure 12 provides that a party waives any motion alleging a defect in instituting his prosecution or in the indictment or information if he fails to raise the alleged defect in the time set by the court for the filing of pretrial motions. Fed. R. Crim. P. 12(b)(3)(A)-(B), (e).

A motion to dismiss based on lack of personal jurisdiction is one that must be made prior to trial to avoid its waiver. *United States v. Smith*, 866 F.2d 1092, 1097-98 (9th Cir. 1989).[3]

---

[3]As previously discussed, the manner and timing of Anderson's transfer to the United States did not deprive the district court of jurisdiction over

"[T]he doctrine of specialty implicates the question of whether there is personal jurisdiction over the defendant as a result of the extradition process." *SEC v. Eurobond Exch.*, 13 F.3d 1334, 1337 (9th Cir. 1994) (citing *United States v. Rauscher*, 119 U.S. 407, 432-33 (1886); *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986); *United States v. Vreeken*, 803 F.2d 1085, 1088-89 (10th Cir. 1986)). The question becomes whether Anderson waived his challenge to personal jurisdiction.

**[8]** Other circuits have held that a "waiver" under Rule 12 does not require the voluntary or intentional relinquishment of a known right. *See United States v. Clarke*, 227 F.3d 874, 880-81 (7th Cir. 2000); *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999); *United States v. Chavez-Valencia*, 116 F.3d 127, 130 (5th Cir. 1997). In these circuits, all that is required for a Rule 12 waiver is a defendant's failure to timely assert his right; intent and knowledge are not essential to the waiver. *Clarke*, 227 F.3d at 881; *Weathers*, 186 F.3d at 955; *Chavez-Valencia*, 116 F.3d at 130.

**[9]** The Supreme Court and this circuit have impliedly come to the same conclusion. *See Davis v. United States*, 411 U.S. 233, 243 (1973) (finding waiver based on defendant's simple failure to assert a constitutional claim until habeas proceedings); *United States v. Baramdyka*, 95 F.3d 840, 844 (9th

---

him. This does not, however, foreclose a challenge to personal jurisdiction based upon principles of dual criminality and specialty. Extradition is the means by which a requesting country obtains a limited form of personal jurisdiction over a defendant. *See* M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 515 (4th ed. 2002) ("[T]he requesting state would not have had *in personam* jurisdiction over the relator if not for the requested state's surrender of that person."). Specialty is part of the outline defining the requesting country's limited personal jurisdiction. If the requesting country oversteps the bounds of specialty, it has violated the limited personal jurisdiction granted to it by the requested country.

Cir. 1996) (concluding specialty argument could be waived as part of a defendant's waiver of right to appeal even though the specialty argument was unknown to the defendant at the time of his waiver).[4]

In line with this view, a Rule 12 waiver is more akin to what has traditionally been called a forfeiture. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (stating that "forfeiture is the failure to make the timely assertion of a right," whereas "waiver is the 'intentional relinquishment or abandonment of a known right' "); *Clarke*, 227 F.3d at 881; *Chavez-Valencia*, 116 F.3d at 130. Interpreting a Rule 12 waiver as a forfeiture, however, would render the waiver of "no consequence other than that it would be reviewed for plain error, the same result as if there were no Rule 12." *Weathers*, 186 F.3d at 955. Such a result most likely was not intended by the Supreme Court or Congress. *Id.*

**[10]** In choosing to treat a Rule 12 "waiver" as a true waiver, the District of Columbia Circuit specifically relied on the Supreme Court's statement in *Olano* that " 'whether the defendant's choice [in waiving an argument] must be particularly informed or voluntary . . . depends on the right at stake.' " *Weathers*, 186 F.3d at 955 (quoting *Olano*, 507 U.S. at 733). Specialty is a statutorily created right "not rising to the level of 'fundamentality . . . traditionally demanded before addressing a question of law not argued at the district court level.' " *Baramdyka*, 95 F.3d at 844 (quoting *United States v.*

---

[4] *Baramdyka* can be distinguished from the present case by virtue of the provision in the United States-Chile Extradition Treaty that provides an express exception to the principle of specialty where the person extradited consents to prosecution for an offense committed prior to his extradition. Michael Abbell, *Extradition to and from the United States* § 8-2, at 8-7 n.7 (2004). Baramdyka pled guilty to the count he later attempted to challenge on specialty grounds, and in his plea, he waived his right to appeal the conviction. *Baramdyka*, 95 F.3d at 842-43. The United States-Costa Rica treaty contains no such exception, and Anderson contested the money laundering charges in a lengthy trial.

*Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). Therefore, waiver of the issue of specialty need not be particularly informed or voluntary, and the mere failure of a criminal defendant to raise the issue is enough to "waive" it under Rule 12. We conclude that Anderson waived the dual criminality and specialty issues by failing to raise them in accordance with Rule 12.

**[11]** Nevertheless, "[f]or good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e). The decision whether to grant relief from a Rule 12 waiver "lies in the discretion of the district court." *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003); *see also United States v. Hamm*, 786 F.2d 804, 806 (7th Cir. 1986); *United States v. Mangieri*, 694 F.2d 1270, 1283 (D.C. Cir. 1982). But " 'even issues that are deemed waived [in the district court] under Rule 12 may be addressed by *this* court and relief may be granted' " where good cause is shown for the party's failure to raise the argument earlier. *United States v. Murillo*, 288 F.3d 1126, 1135 (9th Cir. 2002) (quoting *United States v. Wright*, 215 F.3d 1020, 1027 (9th Cir. 2000)) (emphasis added); *see also United States v. Lopez-Lopez*, 282 F.3d 1, 9-10 (1st Cir. 2002) (addressing whether appellant presented good cause *in the appellate court* for his failure to make pretrial motion); *Weathers*, 186 F.3d at 952-53 (same); *United States v. Davis*, 663 F.2d 824, 831 (9th Cir. 1981) (same).

**[12]** If Anderson had attempted and failed in the district court to obtain relief under Rule 12(e) for his failure to raise the dual criminality and specialty issues, we would review the district court's decision denying relief for abuse of discretion. *Tekle*, 329 F.3d at 1113. Moreover, even though in the present case Anderson did not ask the district court for relief from his waiver, we still have authority to decide whether there is good cause to relieve him from that waiver. *Murillo*, 288 F.3d at 1135. Therefore, we will consider Anderson's request for relief from his waiver of the dual criminality and specialty issues.

**[13]** To obtain relief from waiver under Rule 12(e), a party must present a legitimate explanation for his failure to raise the issue in a timely manner. *Davis*, 663 F.2d at 831. Anderson explains in his reply brief that he was unable to obtain a ruling on his extradition from the Costa Rican criminal court until he received a copy of that court's decision. A copy of that decision was contained in the government's Excerpts of Record which it filed in this appeal after Anderson had filed his opening brief. It was only then that Anderson realized he had potential arguments relating to the principles of dual criminality and specialty.

Anderson also appeared pro se in the district court. Over a thousand documents were filed in that proceeding, none of which included the Costa Rican court's extradition order. Even the docket from the Florida district court, where Anderson was first presented to a United States magistrate judge, contains no reference to the Costa Rican extradition order. Furthermore, the United States government admitted at oral argument in this appeal that the final extradition decree from Costa Rica's highest court has not yet been translated from Spanish and is missing a page. Indeed, it is unclear whether the final extradition decree had even been issued prior to the deadline set by the district court for pretrial motions.

**[14]** These circumstances constitute good cause to grant Anderson relief from the waiver of his affirmative defenses of dual criminality and specialty by not raising those defenses until he filed his reply brief in this court. Accordingly, we grant him relief from that waiver.

**[15]** This grant of relief from the waiver, however, does not decide the dual criminality and specialty defenses Anderson presents. Whether Anderson's convictions for conspiracy to launder money and international money laundering should be vacated pursuant to the principles of dual criminality and/or specialty will have to be decided by the district court.

" 'Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations.' " *Clarey*, 138 F.3d at 765 (quoting *Saccoccia*, 18 F.3d at 800 n.6). This doctrine is incorporated into the extradition treaty between the United States and Costa Rica as follows: "An offense shall be a punishable offense if it may be punished under the laws of both Contracting Parties by deprivation of liberty for a maximum period of more than one year or by any greater punishment." Extradition Treaty, U.S.-Costa Rica, art. 2, ¶ 1, S. Treaty Doc. No. 98-17. Anderson alleges that in Costa Rica, money laundering is not punishable unless the laundered funds were derived from drug trafficking. No connection to drug trafficking has been asserted here.

Consistent with Anderson's argument, the Costa Rican trial court apparently ruled that dual criminality did not exist for the money laundering offenses, and it did not approve the United States' extradition request as it related to those charges. However, the Costa Rican court's actual order, which we understand is contained in the final extradition decree, remains to be discovered.

In addition to his argument that the doctrine of dual criminality precluded his extradition for prosecution on the money laundering charges, Anderson argues that the doctrine of specialty was violated. The doctrine of specialty provides that "it is impermissible to try a defendant other than 'for the crime[s] for which he has been extradited.' " *Benitez*, 449 F.3d at 976 (quoting *Johnson*, 205 U.S. at 316). Anderson asserts that the United States violated the principle of specialty by charging him in a second superceding indictment with conspiracy to launder money and international money laundering after Costa Rica had held that it would not extradite him for those charges and after the United States had promised it would not prosecute him for any offenses other than those approved by the Costa Rican court.

Counts 98-104 of the second superceding indictment filed in the Western District of Washington charge Anderson with conspiracy to launder money and international money laundering. That indictment does not allege that the funds were in any way connected with drug trafficking. If the funds were not so connected, the principle of dual criminality would preclude Anderson's extradition from Costa Rica for prosecution of the money laundering charges, and the doctrine of specialty would preclude his prosecution in the United States for those offenses.

If the district court concludes that the principles of dual criminality and/or specialty have been violated as to the money laundering counts, the proper remedy would be to vacate Anderson's convictions on counts 98-104 and resentence him absent those convictions. *See United States v. Khan*, 993 F.2d 1368, 1375 (9th Cir. 1993).

## IV.   CONCLUSION

[16] We affirm Anderson's convictions on counts 1-2, 4-5, 8-25, 27-33, 35-55, 59, 60-63, 65-66, 68-86, and 88-97, and we conclude the manner in which Anderson was brought to trial in the United States did not deprive the district court of personal jurisdiction over him. We remand to the district court for a determination whether Anderson's convictions on the money laundering counts 98-104 should be vacated due to the principles of dual criminality and/or specialty, and if so, for resentencing absent those convictions.

**AFFIRMED IN PART and REMANDED IN PART.**